## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>801 Market Street, Suite 1000,<br>Philadelphia, PA 19107 | ) ) ) ) ) | Civil Action No. _____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT AND** |
| AMZ MANUFACTURING CO.,<br>100 Boxwood Lane,<br>York, PA 17402 | ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Party Emily Rietschy ("Rietschy") and Tabatha Altland ("Altland"). As alleged with greater particularity below, Defendant AMZ Manufacturing Co. unlawfully subjected Rietschy and Altland to a hostile work environment because of their sex in violation of Title VII.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant

to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.    Venue is proper in the U.S. District Court for the Middle District of Pennsylvania under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the alleged unlawful employment practices were committed within the jurisdiction of that Court.

## **PARTIES**

3.    Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the federal agency charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.    At all relevant times, Defendant AMZ Manufacturing Co. ("AMZ" or "Defendant"), a Pennsylvania corporation, has continuously been doing business in York County, Pennsylvania.

5.    At all relevant times, Defendant has continuously had at least fifteen (15) employees.

6.    At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty (30) days prior to the institution of this lawsuit, Charging Party Rietschy filed a charge of discrimination ("Charge") with the EEOC alleging violations of Title VII by Defendant.

8.      Defendant received a copy of the Charge and participated in EEOC's investigation, including by communicating with EEOC enforcement staff and responding to requests from EEOC for a position statement, information, and documents.

9.      On July 21, 2023, EEOC issued an Amended Letter of Determination to Defendant finding reasonable cause to believe that Defendant had violated Title VII with regard to Rietschy and a class of female employees.

10.     EEOC's Amended Letter of Determination invited Defendant to join with EEOC in informal methods of conciliation to endeavor to eliminate the discrimination found to have occurred and provide appropriate relief.

11.     EEOC engaged in communications with Defendant to provide it an opportunity to remedy the discriminatory practices described in the Amended Letter of Determination on terms acceptable to the EEOC.

12.     EEOC was unable to secure an acceptable conciliation agreement from Defendant, and on August 1, 2023, EEOC issued to Defendant a Notice of Failure of Conciliation.

13.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14.    At all relevant times, Defendant has owned and operated a manufacturing facility located at 2206 Pennsylvania Ave in York, Pennsylvania (the "Pennsylvania Ave. facility" or "the facility").

### *Emily Rietschy*

15.    Rietschy, a female, was hired by Defendant as a Production Planner, at its Pennsylvania Ave. facility on November 5, 2018.

16.    Beginning shortly after Rietschy's hire, and continuing throughout her employment, Defendant subjected Rietschy to unwelcome and offensive harassment because of her sex (female), including but not limited to the following conduct:

        a)    Male associates regularly cat-called Rietschy when she was on the production floor, telling her she had a "nice ass" and "nice tits."

        b)    When Rietschy reported these comments to Production Manager Joseph Sallinger, he brushed off her concerns, responding that their workplace was a "boy's club" and "just how it was."

        c)    While sharing an office with Rietschy, Sallinger repeatedly referred to difficult jobs as "abortions."

d)     Sam Gurreri, Sr., a male maintenance employee, made sexual and disparaging sex-based comments to Rietschy and in her presence.

e)     On one occasion, while conversing with Production Manager Sallinger in front of Rietschy, Gurreri complained about how much women talk and stated that, "God gave women two sets of lips" but "at least one set does not talk."

f)     Rietschy verbally complained about this comment to Sallinger, who reiterated that she needed a thicker skin.

g)     Rietschy also complained about Gurreri's comment to a Human Resources Manager.

h)     After his "lips" comment,  Gurreri continued to make offensive, sexualized statements to Rietschy. In or around June 2019, when she asked him to move a dry erase board to another wall in her office, he responded, "Only if I can mount you first."

i)     Upon notifying Sallinger of Gurreri's comment, Rietschy's complaint was again brushed off.

j)     Defendant did not investigate Rietschy's complaints about Gurreri and took no corrective action to address Gurreri's harassment.

k)     Rietschy's duties included creating production schedules and obtaining comments on those schedules from production associates. In or around

March 2019, Senior Plater Dean Grove, who is male, returned his schedule to Rietschy with "FU," short for fuck you, written on it.

l)    Rietschy reported Grove's conduct to Human Resources, after which Grove told her, "I was told I have to apologize to you."

m)    Grove's harassment of Rietschy continued. In June of 2019, in response to a job status request, Grove told Rietschy to "get off her fat ass" if she "wanted to know what work they run in a shift."

n)    Rietschy reported the comment to Human Resources in an email with General Manager Mike Billman copied and noted that "[Grove's] behavior cannot be blamed on anything but the fact that he continuously is allowed to get away with it" and that "the worst part . . . [is] the fact that it won't change because he isn't required to change."

o)    Defendant did not investigate this complaint about Grove and took no corrective action to address Grove's conduct.

p)    In or around May or June of 2019, when Rietschy made a suggestion regarding a production issue that Vice President of Technical Operations Terry Miller was discussing with Sallinger, Miller made a "stop" gesture in front of her face, shushed her, and told her that "men are speaking."

q)    On or around the week of June 24, 2019, Production Manager Sallinger received a report that a longstanding male employee was frequently masturbating at work, and that a female employee had been forced to witness this.

r)    On or around July 18, 2019, Rietschy answered a call on Defendant's main line from the son of the female employee who had witnessed the masturbation. The son was calling to complain that Defendant was aware of the problem but had done nothing to stop it.

s)    Rietschy immediately reported the call to General Manager Billman and to Human Resources.

t)    Sallinger and Vice President Miller did not speak to the offending employee until July 22, 2019, a month after they had learned of his conduct, and four days after Rietschy informed Defendant about the son's call.

17.    Fearing for her physical safety due to management's failure to take her complaints of harassment seriously and its lack of urgency in response to an employee exposing himself and masturbating at work, Rietschy resigned about three weeks later.

18.    In her resignation letter, Rietschy questioned "how any of the females in th[e] facility [are] supposed to feel safe when sexual harassment concerns aren't addressed in a timely manner[.]" Nonetheless, additional reports of sexual harassment continued to go unaddressed after Rietschy's departure.

7

*Tabatha Altland*

19.    Altland, a female, was hired by Defendant on January 4, 2019, as a Racker at its Pennsylvania Ave. facility, and in or around 2021 was promoted to the position of Plater.

20.    Beginning shortly after Altland's hire, and continuing through approximately September 2021, Defendant subjected Altland to unwelcome and offensive harassment because of her sex, including but not limited to the following:

a)    Wesley Burd Jr., a Plater, frequently made vulgar sexual comments about Altland's appearance and body, telling her that she had a "nice ass," "very good figure," "nice tits," and "bigger tits" than his 16-year-old daughter.

b)    Shawn Rowe, a Production Associate, made similar comments to Burd's about Altland's appearance and told her that he would "love to touch her."

c)    Burd made sexual overtures to Altland, proclaiming that he would "love to see [her] without any clothes on" and "love to take care of [her]."

d)    Altland rejected Burd's advances by telling him that she was married and that her spouse is a woman. In response, Burd began making crude comments about Altland's relationship and sexual orientation. Burd told her that her marriage "was disgusting," that her wife "can't give her what he can," and "what's inside his pants would satisfy her."

e)    Burd often brushed up against Altland, touching her buttocks and thighs.

f)    Burd continually leered and stared at Altland and followed her around the facility, including to the break room or outside when she was on her lunch break and when she went to the restroom.

g)    To avoid Burd, Altland waited until she knew he had already taken his lunch break and was busy before she would take hers. Despite her careful planning of her breaks, when she went to the break room or outside, Burd would appear.

h)    On at least one occasion, Altland hid behind bushes outside the facility when on her break so that Burd would not see her and would go back inside.

21.    Altland repeatedly reported Burd's harassment to Production Manager Sallinger, her and Burd's direct supervisor, from when she began her employment in 2019 until about or around September 2021, when Burd's employment ended.

22.    Sallinger told Altland that he would talk to Burd, but when Sallinger did, Burd merely acted sullen and ignored Altland for a week or two before resuming his harassment of her.

23.    Altland would then again complain about Burd's harassment to Sallinger.

24.    Altland also verbally complained about Burd's sexual comments and touching repeatedly to Vice President Miller and General Manager Billman.

25.    Neither Miller nor Billman took any action to correct Burd's conduct towards Altland.

26.    On April 29, 2021, Altland submitted a written complaint concerning Burd's comments and conduct, stating that he was following her outside to lunch and to the break room and had looked down her shirt.

27.    In response to Altland's complaint, Defendant issued a written warning to Burd, which proved ineffective.

28.    Burd's harassment of Altland did not stop after the written warning, and Altland continued to notify Sallinger, her and Burd's direct supervisor, of Burd's harassment.

29.    Defendant failed to take any additional action to address or correct Burd's harassing conduct.

30.    Burd's harassment of Altland only ceased when he was terminated for workplace violence unrelated to Altland on or around September 2021.

## CAUSE OF ACTION

### Hostile Work Environment Because of Sex

31.    EEOC repeats and incorporates by reference the factual allegations set forth in Paragraphs 14 through 30.

32.    Defendant subjected Rietschy and Altland to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of their sex (female).

33.    The discriminatory practices described above were based on sex; unwelcome; and sufficiently severe or pervasive, both objectively and subjectively, to alter the terms and conditions of Altland's and Rietschy's employment.

34.    Defendant knew or should have known about the sexual harassment of Altland and Rietschy committed by non-managerial employees, but it failed to take prompt action reasonably calculated to stop the harassment and prevent its recurrence.

35.    Defendant is liable for the harassing conduct of its male employees, both managerial and non-managerial, including but not limited to Sam Gurreri, Sr., Dean Grove, Wesley Burd, Shawn Rowe, Joseph Sallinger, and Terry Miller.

36.    The effect of the practices complained of in Paragraphs 14 through 30, above, has been to deprive the aggrieved employees of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

37.    The unlawful employment practice described above were intentional.

38.    The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of the aggrieved employees.

## PRAYER FOR RELIEF

Wherefore, EEOC respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its owners, members, officers, agents, servants, employees, assignees, successors, and all persons in active concert or participation with Defendant, from engaging in, or failing to take prompt, corrective action in response to, sex-based harassment and other employment practices that discriminate based on sex;

B.    Order Defendant to carry out such policies, practices, and programs necessary to provide equal employment opportunities, ensure Defendant's operations are free from sex-based harassment and discrimination, and eradicate and remedy the effects of Defendant's past and present unlawful employment practices;

C.    Order Defendant to make whole Rietschy and Altland by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, embarrassment, degradation, inconvenience, loss of enjoyment of life, humiliation, in amounts to be determined at trial;

D.  Order Defendant to pay Rietschy and Altland punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

E.  Grant such further relief as the Court deems necessary and proper in the public interest; and

F.  Award EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel

DEBRA M. LAWRENCE
Regional Attorney

s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney

CHRISTINE T. JOHNSON
Trial Attorney
Washington Field Office
131 M Street, N.E. Suite 4NE03
Washington, D.C. 20507

Phone: (202) 921-3022
Fax: (202) 827-2349
Christine.Johnson@eeoc.gov
DC1739030

Dated:          September 25, 2023